**Paul J. LALLA, et al.,**

v.

**CITY OF NEW ORLEANS, et al.**

**Nos. CIV.A. 96–2640, 96–2658, 98–3591.**

United States District Court,
E.D. Louisiana.

April 4, 2001.

Clement Peter Donelon, Clement P. Donelon, Attorney at Law, Roland Vaughn Cimini, Cimini & Associates, Metaire, LA, for Paul J. Lalla.

Mavis Slattery Early, Avis Marie Russell, Annabelle Hoppe Walker, George C. Wallace, Jr., Franz L. Zibilich, Greta L. Wilson, Arlinda Pierce Westbrook, City Attorney's Office, City Hall, New Orleans, LA, for City of New Orleans, Marc H. Morial, Sidney J. Barthelemy, William J. McCrossen, and Warren E. McDaniels.

Ralph D. Dwyer, Jr., Attorney at Law, Gilbert R. Buras, Jr., Attorney at Law, New Orleans, LA, for J. Michael Doyle, Jr.

George C. Wallace, Jr., Louis Leo Robein, Jr., Robein, Urann & Lurye, Metairie, LA, for New Orleans Firefighters Association Local No. 632.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

Plaintiffs Paul J. Lalla, Donald Courtade, Jr., David A. Castanedo, Richard L. Collignon, Daniel J. Hampton, Glynn R. Vazquez, Kenneth P. Rauch, Gary S. Hargis, Jr., John J. Segretto, Jr., and Sean T. McCormick, and Donald Thezan ("the Lalla plaintiffs") have filed a motion under 42 U.S.C. § 1988 and under Federal Rule of Civil Procedure 54(d)(1) and (2) for an award of attorney's fees and costs against the defendant City of New Orleans ("the City") as prevailing parties in these three consolidated actions. The Lalla plaintiffs, eleven white males who applied to the City for the position of Fire Recruit, alleged in their complaint that the defendant violated their civil rights under 42 U.S.C. § 1983 by using race as a factor in hiring Fire Recruits and by using a racial quota in the hiring process.[1] The Lalla plaintiffs and the City filed cross motions for summary judgment on the issue of whether the City's Fire Recruit hiring practices constituted a violation of 42 U.S.C. § 1983. By ruling entered on March 15, 1999 (Rec. Doc. No. 172), this Court concluded, based

---

1. The same two attorneys who represented the eleven Lalla plaintiffs filed a fourth suit against the City wherein 56 plaintiffs, also while males who applied for the position as Fire Recruit, claimed damages under 42 U.S.C. § 1983, alleging that the City had unlawfully used race as a hiring criterion and utilized a racial quota system in hiring Fire Recruits. This fourth suit, Civil action 99–1434, *Armand Bourdais v. City of New Orleans,* was initially consolidated with these three actions (Rec.Doc. No. 244), but was severed from them upon the plaintiffs' motion. (Rec.Doc. No. 301). No attorney's fees are being awarded herein for services rendered in connection with *Bourdais.*

upon the evidence presented on summary judgment, that the City violated the equal protection rights of the plaintiffs under the Fourteenth Amendment to the United States Constitution by enacting and enforcing the remedial hiring program in effect for Fire Recruits which used race as a factor in its hiring decisions and instituted a racial quota system. By order entered on January 6, 2000, this Court granted partial summary judgment in favor of plaintiffs added to the suit after the March 15, 1999 ruling, finding that the previous ruling on liability applied equally to their claims. The Court cautioned, however, that "[e]ach individual plaintiff must still prove at trial that, but for his race, he would have been hired, or hired sooner, that the use of race as a factor in his hiring caused him damages, and what damages, if any he has sustained as a result of the City's use of race in its hiring decisions." Rec. Doc. No. 262, n. 3, p. 6.

On November 2, 2000, after an intensive settlement conference with the Magistrate Judge, all eleven plaintiffs and the City reached a settlement agreement in which the City agreed to pay the plaintiffs the sum of $ 499,999.99, exclusive of the plaintiffs' claim for attorney's fees and costs under 42 U.S.C. § 1988. Subsequently, the releases were prepared and signed by, and the settlement funds delivered to, all eleven *Lalla* plaintiffs.

### Plaintiffs' Attorney Fee Request

Plaintiffs filed an initial motion for attorney's fees following the settlement, a second supplemental motion seeking fees incurred after the date of the settlement and up to oral argument on their motion for attorney's fees and costs, and a third supplemental motion for attorney's fees and costs for services rendered and costs incurred to the date of the filing of the third supplemental motion. In the plaintiffs' initial motion for attorney's fees and costs under 42 U.S.C. § 1988, plaintiffs sought the lodestar amount of $ 184,630.00 in attorney's fees for the efforts of attorney Clement Donelon, $ 123,937.50 for the efforts of attorney R. Vaughn Cimini, a 33 % enhancement of the lodestar based upon the *Johnson* factors, $ 16,875 for the services of paralegals/secretaries, and $ 21,097.49 in litigation costs, which include deposition fees, other transcripts, expert fees, photocopying, court costs, witness fees, service fees, long distance charges, parking fees, and legal research costs.

Plaintiffs filed second and third supplemental requests for attorneys' fees for hours expended subsequent to the initial petition, and then sent a letter correcting certain errors in their requests. They modified their request for an enhancement, reducing their request from a 33% multiplier to a 25% multiplier due to the results obtained and the difficulty of the issues, and additionally, or alternatively, they seek interest for delay in payment. Plaintiffs seek an hourly rate of $ 185 per hour for Mr. Donelon's services, $ 150 per hour for Mr. Cimini's services, and $ 25 per hour for paralegal/secretarial services. Plaintiffs request that the following amounts be awarded to them as prevailing plaintiffs under 42 U.S.C. § 1988, with enhancement of 25% and/or interest of 10% accruing 60 days after services were rendered:

| | Hours | Rate | Amount |
|---|---|---|---|
| For services of: | | | |
| Clement Donelon | 1,101.625 | $ 185 | $ 203,800.63 |
| Vaughn Cimini | 871.75 | $ 150 | $ 130,762.50 |
| Paralegal/ Secretarial Services | 682.75 | $ 25 | $ 17,068.75 |
| Costs | | | $ 21,664.11 |
| | | | |
| **Total Fee and Cost Request** | | | **$ 373,295.99** |

(Before Enhancement)

**With 25% Enhancement of**

Attorney's Lodestar $ 456,936.77

(Lodestar $ 334,563.13
[$ 203,800.63 + $ 130,762.50]
× 25% + paralegal and costs)

As reflected above, the lodestar amount requested by Donelon is $ 204,471.25 for 1,105.25 hours at $ 185 per hour. The lodestar amount requested by Cimini is $ 130,762.50 for 871.75 hours at $ 150 per hour. The combined lodestar amount for both attorneys is $ 334,563.13, and with a 25% enhancement of $ 83,640.78, the total attorney's fee sought is $ 418,203.91, excluding costs and paralegal/secretaries fees. Shortly before oral argument, plaintiffs submitted the expert report of a Certified Public Accountant, who calculated 10% simple interest on $ 363,072 [2] on the basis that payment was due when services were rendered or costs incurred, and 10% interest accrued on any balance unpaid after sixty days. Under this scenario, plaintiffs seek $ 363,072 for attorneys fees and costs, 10% simple interest of $ 80,392, for a total fee of $ 443,464, without enhancement.

Both plaintiffs' attorneys submitted affidavits outlining their relevant legal experience, knowledge of civil rights and employment discrimination law, and practice in federal court and in the civil rights and employment discrimination area. The affidavits noted their respective contributions to the successful pursuit of this case. In addition, the City deposed both Donelon and Cimini on the issues relevant to the instant motion.

### Relevant Proceedings

The lead case of these three consolidated actions, 96–2640, was filed by a single plaintiff, Paul Lalla, on August 9, 1996.

The second action, 96–2658, was filed by nine plaintiffs, Donald J. Courtade, Jr., David A. Castanedo, Richard L. Collignon, Daniel J. Hampton, Glynn R. Vazquez, Kenneth P. Rauch, Gary S. Hargis, Jr., John J. Segretto, Jr., and Sean T. McCormick, on August 13, 1996, and was consolidated with the lead case on October 1, 1996. The third action, 98–3591, was filed by a single plaintiff, David D. Thezan, on December 4, 1998, and was consolidated with the lead case on March 4, 1999. Settlement was reached on the claims of all eleven plaintiffs, excluding attorney's fees and costs, on Friday, November 2, 2000. Jury trial in the matter was scheduled on November 6, 2000. These eleven plaintiffs filed claims under 42 U.S.C. § 1983 against seven defendants, including the City of New Orleans, J. Michael Doyle, Jr., individually and in his capacity as Director of Personnel for the New Orleans Department of City Civil Services, Marc H. Morial, in his capacity as Mayor of the City of New Orleans, Sidney J. Barthelemy, in his capacity as the Mayor of the City of New Orleans, William J. McCrossen, in his capacity as former Superintendent of the City of New Orleans Fire Department, Warren E. McDaniels, in his capacity as the Superintendent of the New Orleans Fire Department, and New Orleans Firefighters Association Local No. 632. Ultimately, plaintiffs prevailed in their claims against a single defendant, the City, with eleven plaintiffs sharing the settlement sum of $ 499,999.99. Morial, Barthelemy, McCrossen, and McDaniels all were granted summary judgment on plaintiffs' claims.

In conducting discovery on this claim, plaintiffs' counsel took nine depositions [3]

---

2. This figure represents Donelon's fee of $ 196,100 (1,069 @ $ 185 per hour), Cimini's fee of $ 129,000 (860 hours @ $ 150 per hour), litigation costs of $ 21,097, and paralegal/secretary costs of $ 16,875. These figures were updated in the supplemental request subsequent to oral argument.

3. Plaintiffs' memorandum in support of their initial application for attorneys' fees and costs

and prepared and served 11 sets of interrogatories, 10 Requests for Production, and 6 Requests for Admission.[4] Plaintiffs prepared proposed jury interrogatories and jury instructions for submission to the court on two occasions.[5] Much of the effort expended on this case was concentrated on researching and preparing motions for summary judgment on the liability issues in the case, preparing statistical analyses regarding if and when the plaintiffs would have been hired had race not been a factor in the City's hiring decisions, and interviewing the 11 plaintiffs concerning their financial records, such as income tax returns, W–2 forms, and check stubs, for purposes of establishing damages.

Plaintiffs also retained two expert witnesses, an industrial psychologist and a certified public accountant/certified financial planner. Since the case did not proceed to trial, however, plaintiff was spared the expense of procuring the attendance of these experts at a trial.

In fact, plaintiffs and plaintiffs' counsel were spared the considerable expense, uncertainty, and delay in payment of a trial and of an appeal by virtue of the settlement. Unlike the circumstances in several of the cases cited by the plaintiff which will be discussed *infra*, wherein plaintiffs there were required to try cases for several days and pursue single and sometimes multiple appeals to the appellate courts and to defend writ applications to the Supreme Court, plaintiffs here were successful in obtaining a summary judgment on liability and in reaching a monetary settlement

with the defendant on the eve of trial, obviating the necessity of a prolonged trial over a number of days, lengthy post-trial motions, and the time and labor-intensive pursuit of an appeal, which could have lasted for years. While plaintiffs did an impressive amount of work to obtain summary judgment on liability, the effort to obtain summary judgment and a settlement does not approach the likely expenditure of labor, time, and money to try to a jury the causation and damages issues for 11 plaintiffs, and then to defend any jury award or favorable summary judgment ruling on appeal, or appeal an adverse jury finding on causation and damages.

Plaintiffs represent in their memoranda that they interviewed and re-interviewed all 11 plaintiffs each of the five times that the case was set for trial. While the Court has no doubt that plaintiffs counsel interviewed each plaintiff more than once, there is reason to doubt seriously the suggestion that *each* time the case was *set* for trial, both plaintiffs counsel spent several hours interviewing all eleven clients in preparation for their trial testimony.

Trial on the claims of first 10 plaintiffs was initially scheduled on January 28, 1998, with a pretrial conference to be held on December 11, 1997. Pursuant to plaintiffs' motion, the trial, pretrial, and cutoff dates were continued by order entered on October 6, 1997. This is two months prior to the scheduled pretrial conference. It is unreasonable to conclude that Plaintiffs' counsel would have interviewed 10 plain-

---

states at one point that plaintiffs' counsel took nine depositions and at another point it states that plaintiffs' "funded 10 depositions."

**4.** On November 18, 1998, Magistrate Judge Africk awarded plaintiffs' counsel the sum of $ 7,873.43, which is 75% of the plaintiffs' request of $ 8,573.43 for fees and costs incurred in filing motions for sanctions and motions to compel answers to discovery.

(Rec.Doc. No. 144). Plaintiffs represent that no compensation is sought in this application for those services.

**5.** While plaintiffs did submit multiple sets of jury interrogatories and jury instructions, the subsequent sets were revised versions of the first.

tiffs[6] for purposes of *trial* nearly *two months* prior to the pretrial conference, particularly since the continuance was pursuant to the plaintiff's motion.

The second trial setting was July 13, 1998, with a pretrial conference on June 16, 1998. On April 14, 1998, the case was reassigned to Judge Lemelle's section. On June 25, 1998, Judge Lemelle continued the trial at the pretrial conference so that oral argument could be held on the pending motions for summary judgment. The trial continuance was granted three weeks prior to the trial while the parties were embroiled in significant summary judgment practice.

Approximately one month prior to the pretrial conference, the City and the plaintiffs filed cross motions for summary judgment on the issue of whether the City's method of hiring applicants for the position of Fire Recruit violated the Equal Protection Clause of the 14th Amendment and 42 U.S.C. § 1983. The other defendants similarly filed motions for summary judgment seeking dismissal of plaintiffs' claims. Plaintiffs filed opposition memoranda to all motions for summary judgment and supplemental memoranda in support of their motion. Oral argument was heard on these summary judgment motions on July 29, 1998. After the motions had been submitted for three months, Judge Lemelle recused himself and the matter was transferred back to the undersigned. The Court recognizes that any delay and expense caused by these events were not attributable to any actions of either the plaintiffs or defendant.

Oral argument was scheduled by the undersigned on the pending motions for summary judgment and was heard on January 13, 1999. The third trial setting was

February 22, 1999, with a pretrial conference to be held on February 4, 1999.

On January 28, 1999, nearly one month prior to trial while the summary judgment motions were still pending, the City filed an expedited motion to continue trial and to consolidate cases. This third trial setting was continued on January 29, 1999, and civil action 98–3591 was consolidated with lead case 96–2640 and 96–2658. On March 12, 1999, the Court granted the plaintiffs' motion for summary judgment on liability and denied the City's motion for summary judgment. The trial was continued and a pretrial conference was scheduled in this matter on September 28, 1999 and jury trial on causation and damages was set on October 18, 1999.

Throughout the course of the litigation, while plaintiffs' counsel engaged in discovery by taking depositions and propounding interrogatories, requests for production, and requests for admissions, they were subject to comparatively little reciprocal discovery. Only one of the plaintiffs was deposed, although plaintiffs' counsel, upon the informal request of defendant, furnished the City with the information defense counsel asked them to produce in lieu of deposition.

The October 19, 1999 jury trial was continued on October 14, 1999, the virtual eve of trial. Jury interrogatories and instructions were filed by the parties prior to the continuance. A fourth case adding 54 plaintiffs pursuing identical claims to the plaintiffs in the previous three consolidated cases was filed by plaintiffs' counsel. A final pretrial conference was set on March 16, 2000 and jury trial was set on March 27, 2000.

---

6. The third consolidated case, 98–3591, was not filed until December 4, 1998 and was not consolidated with the two previously filed actions until March 4, 1999, after the third trial setting.

Defendants Marc H. Morial, Sidney Bar-thelemy, William J. McCrossen and War-ren E. McDaniels filed an opposed motion for summary judgment, which the Court granted on February 10, 2000. On February 14, 2000, over a month prior to the pretrial conference and six weeks prior to trial, trial was again continued due to the addition of 54 plaintiffs. The parties even-tually agreed that the fourth action adding 54 plaintiffs be severed from the consolida-tion so that the original 11 plaintiffs' claims could be tried without further de-lay.[7] A pretrial conference was set on October 19, 2000 and jury trial was sched-uled on November 6, 2000. The trial was never held because all 11 plaintiffs settled with the City on November 2, 2000, the Friday before the trial.

While the Court agrees that plaintiffs' counsel did reasonably engage in witness preparation for trial more than once, it was not necessary for counsel to engage in repeated, lengthy trial preparation of each plaintiff. After the plaintiffs' sum-mary judgment on liability was granted, the issues to be tried were limited to cau-sation and damages. The plaintiffs' testi-mony would have been primarily on dam-ages, which included wage loss from the time each plaintiff contended he should have been hired to the time he was actual-ly hired[8], with credit for any interim earnings. This testimony did not require repeated, intensive preparation, but only updates with the current financial infor-mation.

### The Hourly Rate

Significant attorney's fees are being re-quested by two different attorneys who maintain individual law practices in sepa-rate offices, but who worked as co-counsel in this case. Lalla, the lead plaintiff, con-tacted Cimini, who filed the initial com-plaint, but quickly realized he needed ex-perienced help. While Cimini had worked as an Assistant District Attorney in Or-leans Parish prosecuting criminal cases, his primary civil experience was trying insurance defense cases for National Au-tomotive Insurance Company. The in-stant actions are the only employment dis-crimination cases he has handled in this Eastern District of Louisiana, but prior to these cases, he had handled one case in the Middle District of Louisiana which was dismissed on summary judgment. He tried four or five non-employment dis-crimination cases for the defense at Civil District Court for the Parish of Orleans. Before pursuing the claims of these 11 plaintiffs, he tried one case for the plain-tiff in state court, but has never tried a case in federal court. Cimini requests an hourly rate of $ 150 per hour for his rep-resentation of these eleven plaintiffs.

Donelon has 25 years of experience han-dling employment discrimination cases. He worked as an attorney handling em-ployment discrimination charges filed against South Central Bell for three years, defending over 200 charges filed with the EEOC[9] against South Central Bell. He was then employed as a Trial Attorney with the New Orleans District Office of the EEOC for five years, litigating numerous cases filed under Title VII, the Equal Pay Act, and age discrimination laws in both Louisiana and Arkansas. He left the

---

7. This fourth case, Civil Action 99–1434, *Ar-mand Bourdais, et al v. City of New Orleans,* is proceeding separately from the *Lalla* consoli-dation.

8. All but one of the original 11 plaintiffs was eventually hired by the City as a Fire Recruit.

The remaining plaintiff elected to take a simi-lar position in Slidell, Louisiana.

9. Equal Employment Opportunity Commis-sion.

EEOC and entered private practice, handling many plaintiffs' employment discrimination claims successfully and defending Jefferson Parish against employment discrimination charges on a part-time basis as an Assistant Parish Attorney. Donelon seeks an hourly rate of $ 185 per hour for the services provided to the eleven plaintiffs herein.

### A Reasonable Fee

Plaintiffs seek attorneys' fees and costs under 42 U.S.C. § 1988(b), which allows prevailing plaintiffs to shift the cost of prosecuting civil rights actions to the defendant, providing in relevant part that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."

The Fifth Circuit has oft-repeated that a request for attorneys' fees should not spawn ancillary major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Board*, 919 F.2d 374, 379 (5th Cir.1990). The district court's discretion in fashioning a reasonable attorney's fee is broad and reviewable only for an abuse of discretion, i.e., it will not be reversed unless there is strong evidence that it is excessive or inadequate, or the amount chosen is clearly erroneous. *Hopwood v. State of Texas*, 236 F.3d 256, 277, n. 79 (5th Cir.2000); *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941.

In determining a reasonable fee, the district court must provide a concise but clear explanation of its reasons for the fee award under 42 U.S.C. § 1988(b), making subsidiary factual determinations regarding whether the requested hourly rate is reasonable and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit. *Hensley*, 461 U.S. at 437–39, 103 S.Ct. at 1941–43; *Associated Builders and Contractors*, 919 F.2d at 379. The Fifth Circuit has noted the following with respect to appellate review of the district court's findings on an attorney fee application:

"The district court's findings of subsidiary fact govern unless they are clearly erroneous. *Brantley v. Surles*, 804 F.2d 321, 326 (5th Cir.1986). If the district court has articulated and clearly applied the criteria for analyzing § 1988 attorneys' fee requests, we will not require the trial court's findings to be so excruciating explicit in this area of minutiae that decisions on fee awards consume more judicial paper than did the cases from which they arose. As we have held, 'our concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation.' " *Brantley*, 804 F.2d at 325–26.

*Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir.1990).

To qualify as a "prevailing party" under § 1988(b):

"[A] civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement... In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modify-

ing the defendant's behavior in a way that directly benefits the plaintiff."

*Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

That the plaintiffs here satisfy the requirement of being "prevailing parties" under 42 U.S.C. § 1988(b) is not disputed by the defendant, nor could it be. Plaintiffs' counsel not only succeeded in obtaining a summary judgment on liability for their clients, but used this as a basis to negotiate a $ 500,000 settlement for eleven plaintiffs. While even nominal damages can support an award of attorney's fees to plaintiff's counsel as a prevailing party, where, as here, plaintiffs' counsel succeeded in achieving a goal for all future Fire Recruit applicants to the City, the termination of the use of race as a criterion in hiring and the practice of using racial quotas to fill Fire Recruit positions, a prevailing party fee award is particularly appropriate. *Hopwood*, 236 F.3d at 278. *See also Farrar v. Hobby*, 506 U.S. at 112, 113 S.Ct. at 573 (A plaintiff who wins a nominal damage award is a § 1988 prevailing party and is entitled to fees) *and Robinson v. Kimbrough*, 652 F.2d 458, 466 (5th Cir. 1981)(Fee awards are warranted when plaintiff's suit is "a substantial factor or significant catalyst in motivating the defendants to end their unconstitutional behavior").

■ The first step in determining an appropriate award of attorneys' fees and costs under § 1988 is the calculation of the "lodestar" by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly billing rate. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Inasmuch as the statute allows only for the awarding of a *reasonable* fee as determined by the court, the fee applicant bears the burden of establishing that the hours

expended and the billing rate are reasonable. 461 U.S. at 437, 103 S.Ct. at 1941.

■ To establish that the hours expended are reasonable, "[t]he party seeking attorney's fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented. *Hensley*, 461 U.S. at 432–34, 103 S.Ct. at 1939; *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir.1990). The hours surviving this vetting process are those reasonably expended on the litigation." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). To determine a reasonable hourly rate, the court must consider the "prevailing market rates in the relevant community", supported by evidence in the record. *League of United Latin American Citizens # 4552 (LULAC) v. Roscoe Independent School District*, 119 F.3d 1228, 1234 (5th Cir. 1997).

■ In evaluating the reasonableness of the fee request, the court must consider the factors described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

■ The Supreme Court has, however, greatly circumscribed the use of the

second, third, eighth, and ninth *Johnson* factors. *Walker v. U.S. Department of Housing and Urban Development,* 99 F.3d 761, 771–72 (5th Cir.1996). Generally, the novelty and complexity of the issues are "fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates." *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984). In the exceptional case where the experience and special skill of the attorney requires the expenditure of fewer hours than normal due to the complexity or novelty of the question, that special skill and experience should be reflected in a higher hourly rate. *Id.* Similarly, "quality of representation" is subsumed in a reasonable hourly rate, and an upward adjustment is justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charges and that the success was 'exceptional'." *Id.* In the circumstance of a contingency fee, no multiplier or enhancement of a reasonable lodestar fee normally can be employed to compensate for assuming the risk of loss, and enhancement to compensate for the risk of nonpayment is "reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported in the record and specific findings by the courts." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 728, 107 S.Ct. 3078, 3088, 97 L.Ed.2d 585 (1987).[10]

 It therefore follows, as the Fifth Circuit has repeatedly emphasized, that most of the *Johnson* factors are reflected in the lodestar amount and cannot be used to adjust the lodestar upward or downward. *Walker v. United States Dept. of Housing & Urban Dev.,* 99 F.3d 761, 771 (5th Cir.1996). The lodestar is presumptively reasonable and should be enhanced or reduced only in exceptional cases. *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993).

### The City's Objections

The City does not contest the hourly rate sought by Donelon and Cimini, but has argued vehemently that the number of hours claimed are excessive and should be reduced. The City's objections to the attorney's fee application of plaintiffs' attorneys' Donelon and Cimini are best summarized by the following somewhat acerbic passage in its opposition memorandum:

> This fee application includes literally hundreds of hours of non-attorney work; duplication throughout because of their two-for-the-price-of-two-when-one-will-do "team" approach; and hundreds of hours of unnecessary research, drafting and redrafting of pleadings, meetings between co-counsel and clients, and hundreds of hours of meetings between co-counsel vaguely described for the purpose of "discussing trial strategy." This case was from the beginning over-cooked, over-litigated and over-lawyered by two attorneys who have submitted vague and scanty documentation of their time and efforts and who, through a combination of avarice and gross mis-

---

**10.** Such an exceptional circumstance would require evidence in the record "that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market", and generally, even if the Court finds justification for

enhancing due to non-payment risk, the enhancement may be no more than one-third of the lodestar, absent the "most exacting justification." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. at 730–31, 107 S.Ct. at 3089.

judgment of efficient use of time, have inflated by two-thirds the value of those efforts due only to the largesse of the taxpayers of the City of New Orleans. Memorandum of the City of New Orleans in Opposition to the Application for Attorney's Fees, p. 2 (Rec.Doc. No. 332).

In essence, the defendant argues that a reasonable fee would be one-third of that which was requested by the plaintiff because (1) two attorneys have sought excessive hours for services that one could have handled alone; (2) the time records kept by each attorney are not sufficiently specific to document the number of hours worked and the services they performed for the plaintiffs' benefit; (3) the hours sought by both attorneys jointly for conferring with each other at a joint rate of $ 335 hour are excessive; (4) the attorneys seek an excessive number of hours for receipt and review of correspondence, preparation of pleadings and legal research; (5) the hours claimed for trial preparation are excessive and were incurred by counsel in calculating lost wages and economic damages, a job which defendant argues could have been done by an accountant in a fraction of the time at much less expense. While the same objections could have been lodged in a less inflammatory, more diplomatic manner, when viewed in conjunction with an examination of the time sheets supportive of the fee application, they do have a ring of truth.

### Reasonable Hourly Rate

As previously noted, Donelon requests an hourly fee of $ 185 per hour and Cimini requests $ 150 per hour for his services. The City does not contest these hourly rates. Upon review of the evidence in the record regarding a reasonable hourly rate, including the affidavits and depositions of plaintiff's counsel, along with the other evidence submitted by plaintiff as to a reasonable rate, including the affidavits of local attorneys reflecting prevailing market rates in this legal community for lawyers with the expertise and experience of plaintiffs' two attorneys, the Court agrees that $ 150 per hour is a reasonable, appropriate rate for Cimini, considering his background and experience, and $ 185 per hour is a reasonable, appropriate rate for Donelon, considering his background and considerable experience and expertise in employment discrimination practice.

### Reasonably Expended Hours

In connection with the determination of whether the hours claimed by plaintiffs' attorneys were reasonably expended in prosecuting plaintiffs' claims, the Court reviewed the entire record, studying the affidavits and depositions of plaintiffs' counsel and other exhibits submitted in connection with this motion, and carefully scrutinized the contemporaneous time sheets submitted by both Donelon and Cimini. There is little evidence that either Donelon or Cimini exercised any billing judgment in submitting these time records, and there is considerable duplication of effort, excessive time charges for mundane tasks, time charges for tasks which did not require the services of an attorney, but which could have been performed by clerical staff or court-run services, excessive time charges for calculating lost wages, charges for motions to compel for which plaintiffs have already been compensated, charges for attempting to certify a class, a claim abandoned by the plaintiff in this suit and denied by the court in the severed case, and in some instances, particularly regarding conferences between co-counsel, insufficient explanations of charges.

While by no means comprehensive, the following are brief excerpts of the time records of plaintiffs' counsel illustrating the above-listed practices which violate the

principles of hours "reasonably expended" in connection with a fee award under 42 U.S.C. § 1988(b):

### Clement P. Donelon Time Sheets [11]

| Date | Service | Hours |
| --- | --- | --- |
| 9–14–96 | Meeting with Co–Counsel and Clients | 3 |
| 9–21–96 | Meeting with Co–Counsel re: case | 3.5 |
| 9–28–96 | Meeting with Co–Counsel re: testing and disparate impact | 2.5 |
| 1–8–97 | Meeting with Co–Counsel and preparation Of Second Discovery Requests | 2 |
| 1–11–97 | Meeting with Co–Counsel and preparation of Second Discovery Requests | 2.5 |
| 3–22–97 | Meeting with Co–Counsel to review Motion to Compel, discovery evaluation, and expert testimony in response to attorney Dwyer's motions | 2.5 |
| 3–26–97 | Telephone conversation with Co–Counsel | .5 |
| 4–5–97 | Meeting with Co–Counsel to discuss discovery requests, experts, motions to dismiss, and motions to compel against City | 1.5 |
| 4–12–97 | Meeting with Co–Counsel to discuss taking of Joe Gilbert's statement, discovery motions, and motion to dismiss | 2.5 |
| 5–3–97 | Meeting Vaughn Cimini to review discovery responses of both defendants and prepare for 5/11 meetings with all defendants | 3.5 |
| 5–8–97 | Meeting with clients and Co–Counsel, preparation of affidavit and telephone conference with opposing counsel | 4 |
| 5–15–97 | Preparation, filing and transmittal of Notice of Deposition of Eleanor Straub | 1 [12] |
| 5–24–97 | Meeting with Co–Counsel, review Doyle's Supplemental Discovery Responses and call to Dwyer | 4.5 |

**11.** Exhibit 1 to Plaintiffs' Exhibit A to Plaintiff's Second Supplemental Memorandum in Support of their Motion to Assess Attorney's Fees and Costs. (Rec.Doc. No. 329).

**12.** A Notice of Deposition is one page document and a transmittal is a letter transmitting a copy of it to all counsel, jobs which are frequently performed by secretaries or paralegals It could not reasonably have consumed one hour of Donelon's time to have prepared such, although the entry indicates that the time included "filing." Donelon explained in his deposition that he physically drives to the courthouse personally (unless his son is out of school) to file all of this pleadings and documents, and to deliver benchbooks and other items to the court, because he is a one-man office and his secretary is unavailable to leave the office. He testified in his deposition that he thinks it is reasonable to charge $ 185 for the travel time it takes him to file his own pleadings and make deliveries to the courthouse. Donelon deposition, p. 32.

| | | |
|---|---|---|
| 6–25–97 | Filing Notices of Records Depositions to City Civil Service and Jefferson Sulzer | 1 |
| 6–26–97 | Preparation of letter to expert with attachments | 2 |
| 6–27–97 | Preparation of letter to expert | 2 |
| 6–28–97 | Meeting with Co–Counsel to review discovery requests and preparation of affidavit and supplemental memorandum in opposition to Doyle's Motion for Summary Judgment | 3 |
| 7–12–97 | Meeting with Co–Counsel re: Oral Argument for Summary Judgment and discussion of Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment, also discussion of merits to amend lawsuit to class action | 1.5 |
| 8–16–97 | Meeting with Co–Counsel | 2 |
| 9–6–97 | Meeting with Co–Counsel | 3 |
| 9–10–97 | Delivery of expert's report to Opposing Counsel | 1 [13] |
| 9–13–97 | Meeting with Co–Counsel re: possibility of class action status | 2.75 [14] |
| 9–97–97 | Meeting with Co–Counsel | 2 |
| 10–4–97 | Meeting with Co–Counsel re: discovery and new testing of recruits | 2 |
| 12–20–97 | Meeting with Co–Counsel to review file and plan discovery | 2 |
| 1–24–98 | Meeting with Co–Counsel to review discovery requests and to prepare letter for $\frac{2}{11}$ conferences | 2.5 |
| 1–28–98 | Preparation, filing and transmittal of Notices of Deposition for Eleanor Straub and J. Michael Doyle | 1 [15] |
| 2–7–98 | Meeting with Co–Counsel and preparation for depositions of Straub & Doyle | 5 |
| 2–9–98 | Preparation for depositions of Straub & Doyle | 4 [16] |
| 2–10–98 | Preparation for depositions and taking depositions of Straub & Doyle | 6 |
| 2–10–98 | Meeting with Co–Counsel Post depositions | 1 |
| 3–7–98 | Meeting with Co–Counsel | 2.5 |

13. Donelon seeks to be paid $ 185 for physically delivering a report to his opposing counsel.

14. Plaintiffs' did move to certify a class in the *Bourdais* case, which was denied. In these consolidated actions, plaintiffs moved to dismiss voluntarily the class action allegations of their complaint. (Rec.Doc. No. 197).

15. Another one hour ($ 185) charge for preparing a one page form Notice of Deposition and driving to the courthouse to file it.

16. Donelon seeks 9 hours compensation ($ 185 × 9 = $ 1,665) for the preparation for two depositions, both of which lasted 6 hours or less, and one hour to discuss them with co-counsel post-depositions. Cimini has also submitted hours for these depositions.

| | | |
|---|---|---|
| 3–28–98 | Meeting with Co–Counsel | 1.25 |
| 4–16–98 | Filing Plaintiff's Witness and Exhibit List | 1 [17] |
| 4–17–98 | Preparation, filing and transmittal of Plaintiff's Amended Witness and Exhibit List | 1.5 |
| 4–24–98 | Meeting with Co–Counsel to discuss case | 2 |
| 5–1–98 | Ordering transcript of Hearing | 1 [18] |
| 5–2–98 | Meeting with Co–Counsel to discuss case and trial strategy | 1.75 |

These entries are but a few in the 32 pages of time sheets submitted by Donelon for hours expended up to March 7, 2001. While frequently there is a description of the subject matter of the many meetings between co-counsel, just as frequently there is no description, with the entry stating simply "Meeting with Co–Counsel" or "Meeting with Co–Counsel to discuss case and trial strategy." Donelon had numerous one hour ($ 185) charges for "filing" pleadings, i.e., actually driving to the courthouse and filing the documents. There are repeated multiple hour charges for preparation of jury charges and interrogatories, even though the ones filed subsequent to the first were revisions and addendums. Many hours were charged for plaintiff witness preparation, even though, as reviewed previously, there were several trial continuances, some occurring well before the pretrial conference, obviating the necessity for lengthy preparation. Worth noting is that after the summary judgment had been granted on liability, the plaintiff's testimony at trial would have been directed only to lost wages and economic loss. Updated information would have sufficed from the prior trial setting and repeated witness preparation sessions with eleven witnesses were unnecessary and were not hours reasonably expended.

### R. Vaughn Cimini's Time Sheets [19]

This same pattern of failing to exercise billing judgment and duplicative and excessive charges are reflected in Cimini's time records. As a brief recent example, in his Third Supplemental Motion for Attorney's Fees filed on March 28, 2001, for hours expended between March 8, 2001 through March 22, 2001, Cimini seeks 1 hour for preparation for oral argument on attorney's fees and 5 hours for preparation, attendance, and meeting with Donelon after the oral argument on attorney's fees. This is a $ 900 charge, yet Donelon was the attorney who argued the motion. Donelon similarly listed 4 hours on March 13, 2001 to review file, cases, and prepare for oral argument on attorney's fees and 5 hours on March 14, 2001 to prepare for and attend hearing on motion for attor-

17. This $ 185 charge is for physically filing the witness and exhibit lists. There is another charge of 2 hours ($ 185 × 2 = $ 370) for reviewing the file, preparing, and transmitting the witness and exhibit lists.

18. This $ 185 charge is for ordering the transcript from the court recorder. There are corresponding 2 and 3 hour charges for pre-

paring for the hearing and attending the hearing on the plaintiffs' motion for summary judgment.

19. Exhibit B to Plaintiffs' Second Supplemental Memorandum in Support of their Motion to Assess Attorney's Fees and Costs (Rec.Doc. No. 329).

ney's fees [20] and meet with co-counsel. This is a $ 2,405 charge for the same oral argument, thus resulting in total charges of $ 3,305 for oral argument on an attorney's fees application, not including the time charges for preparing the attorney's fee application and for responding to the City's opposition to the motion.

Other *brief* examples, similarly non-comprehensive, of Cimini's failure to exercise billing judgment and for duplicative and excessive hours charged are reflected in the following excerpts from Cimini's time records:

| Date | Service | Hours |
|------|---------|-------|
| 8–9–96 | Filing of Complaint in Federal Court for Lalla | 1 |
| 8–12–96 | Filing of Complaint for Courtade and others | 1 [21] |
| 9–14–96 | Meeting with co-counsel and clients | 3.5 |
| 9–21–96 | Meeting with co-counsel including travel time | 4 |
| 9–28–96 | Meeting with co-counsel Clem Donelon regarding testing and disparate impact includes travel time | 3 |
| 1–8–97 | Meeting with co-counsel and preparation of second discovery requests | 2.5 |
| 1–11–97 | Meeting with co-counsel and preparation of responses to defendants interrogatories and preparation of motion to compel | 3 |
| 2–15–97 | Meeting with co-counsel and preparation of second discovery requests to both defendants and further discussion of Doyle's Motion to Dismiss | 3.5 |
| 3–15–97 | Meeting with co-counsel to discuss Doyle's Motions and selection of expert witness and general trial strategy | 2.5 |
| 4–5–97 | Meeting with co-counsel to discuss discovery requests, experts, Motion to Dismiss and Motion to Compel against City (includes travel time) | 2 [22] |
| 4–10–97 | Filing of first amended complaints in Lalla and Courtade | 1 |
| 5–3–97 | Meeting with co-counsel to review discovery responses of both defendants and prepare 2.11 meetings with all defendants (includes travel time) | 4 |
| 5–8–97 | Meeting with clients and co-counsel, preparation of affidavit and telephone conference with opposing counsel | 4.5 |

**20.** Oral argument began at 10:00 a.m. on the motion for attorney's fees and concluded not later than 11:30 a.m., which is 1.5 hours.

**21.** Like Donelon, Cimini also testified in his deposition that he thought it was reasonable to charge one hour for driving to court to file the complaint and to pick up documents. Cimini Deposition, pp. 84–85, 94–95, 99.

**22.** Cimini's Time Sheets routinely include travel time, but travel time is not separated from the legal work so that a determination could be made as to what portion of the charge is travel time and what portion is legal work.

| | | |
|---|---|---|
| 5–24–97 | Meeting with co-counsel to review possible expert resumes, review Doyle's supplemental responses, and call to Dwyer, and review case data | 5 |
| 6–7–97 | Meeting with co-counsel and preparation of discovery requests | 2.5 |
| 7–12–97 | Meeting with co-counsel Clem Donelon regarding motion for summary judgment and discussion of plaintiffs' supplemental memo in opposition to defendants' motion for summary judgment, discussion of merits of class action | 2 |
| 7–16–97 | Hearing on Motion for Summary Judgment | 2 |
| 8–16–97 | Meeting with co-counsel | 2.5 |
| 9–6–97 | Meeting with co-counsel | 3.5 |
| 9–13–97 | Preparation for and meeting with co-counsel Re: class action | 3.25 [23] |
| 9–27–97 | Preparation for and meeting with co-counsel | 3.5 |
| 10–4–97 | Meeting with co-counsel, discovery regarding new testing and recruits (Lalla) | 2.5 |
| 1–19–98 | Telephone conference with co-counsel re: class certification | .25 |
| 1–24–98 | Meeting with co-counsel to review discovery requests and prepare letters for 2.11 conferences | 3 |
| 2–7–98 | Meeting with co-counsel in preparation for depositions of Straub and Doyle | 5 |
| 2–10–98 | Preparation for depositions and taking depositions of Straub and Doyle | 5 |
| 2–10–98 | Meeting with co-counsel, post depositions | 1 |
| 2–17–98 | Motion for Summary Judgment | 1 [24] |
| 3–4–98 | Preparation and review of motion and memorandum to compel discovery against City of New Orleans (Lalla) | 2.5 [25] |

23. As noted previously, plaintiffs' dismissed their class allegations voluntarily in this suit, and in *Bourdais*, which was separated from the consolidation, class certification was denied.

24. Donelon testified in his affidavit in support of his request for attorney's fees that he prepared for and took all nine depositions, he did extensive research of the law and prepared every sentence and reviewed the depositions in his file and prepared every exhibit to all nine memoranda which were filed in support of plaintiff's three motions for summary judgment against the city, and he prepared both of the memoranda which plaintiffs filed in opposition to the City's motion for summary judgment. Donelon affidavit, Exhibit A to Plaintiffs' Second Supplemental Memorandum in Support of their Motion to Assess Attorney's Fees, para. 30–32.

25. Cimini represents in his affidavit that none of the hours expended preparing motions to compel for which he was previously compensated by Magistrate Judge Africk's order are included. This is a 2.5 hour, $ 375 charge (2.5 × 150) for preparing a motion to compel.

| 3–4–98 | Meeting with co-counsel re: Motion for Partial Summary Judgment | 1.5 |
| 3–5–98 | Review of Memorandum in Support of Motion for Partial Summary Judgment | .75 |
| 3–7–98 | Pull federal cases and attorney names; prepare discovery; MSJ; prepare letter to Arlinda Pierce re: discovery | 2.5 |
| 3–7–98 | Meeting with co-counsel | 3 |
| 3–28–98 | Meeting with co-counsel to discuss Motion to Compel | 1.75 |
| 4–10–98 | Review of file, preparation of witness and exhibit lists and meeting with co-counsel re: Motion for Partial Summary Judgment | 4 |
| 4–20–98 | Preparation of Motion to Compel Discovery | 4 |
| 4–21–98 | Preparation of Motion to Compel Discovery | 4 [26] |
| 4–24–98 | Meeting with co-counsel to discuss case | 2.5 |
| 5–2–98 | Meeting with co-counsel to regarding case strategy | 2.25 |
| 5–4–98 | Prepare Supplemental Motion to Compel (not filed) and phone call to R. Collignon | 2 [27] |
| 5–7–98 | Prepare for deposition and review; meeting with Clem Donelon | 2 |
| 7–2–98 | Meeting with co-counsel to discuss case | 2 |
| 10–16–98 | Meeting to discuss class action with co-counsel | 1.5 |
| 10–24–98 | Meeting with co-counsel to discuss and draft amendment to class action | 3 |
| 11–28–98 | Draft class action complaint for David Thezan | 3 |
| 12–4–98 | Filing of Thezan complaint | 1 |
| 12–11–98 | Revision of and filing of amended class action complaint in Thezan | 2 |
| 8–6–99 | Preparation of Motion to Compel 5th, 6th, 7th, and 8th sets of discovery | 1.5 |
| 9–11–99 | File review and organization | 2 |
| 2–14–00 | Review and organize file | .5 |
| 2–15–00 | Review and organize file | .5 |
| 2–16–00 | Review and organize file | .5 |
| 2–17–00 | Review and organize file | .5 |

**26.** Again, these are repeated charges for motions to compel, for which Cimini states by affidavit he was previously compensated and did not submit charges.

**27.** This is a two hour charge for preparing a motion to compel *which was not filed* and for a phone call of unspecified duration.

2–18–00 Review and organize file .5

1–24–99 Research and preparation of jury charges voir dire questions 2

Cimini listed 3 hours ($ 450) to review the *Hopwood* and *Edwards* decisions on both 9–9–97 and 7–8–98, for a total of $ 900, but, according to Donelon's affidavit, he did not write one sentence of the motions for summary judgment, memoranda in support or the opposition memoranda. While Cimini certainly needed to be familiar with these two cases, $ 900 is an excessive charge for this task.

It is reasonable to conclude that Donelon and Cimini had to meet to discuss this case while it was pending, they had to research the law, they had to interview and prepare witnesses for trial, and they had to prepare for and depose nine witnesses. What is not reasonable is each attorney charging for each and every hour that each attorney spent, with no reductions for the duplication of effort at any turn. Cimini has submitted charges for preparation for and attendance at depositions which Donelon took. While he might have a great interest in attending, he did not need to charge his full hourly fee for preparation and attendance, since he was there as an observer. Cimini has submitted hours, albeit fewer, for research and preparation of jury charges, when Donelon has submitted numerous duplicative hours for the same task. Both attorneys submitted scores of hours for preparation of the eleven plaintiffs, choosing not to divide them up, but to prepare them together. Cimini has submitted numerous hours for preparation of summary judgment motions, which Donelon states he prepared, for preparing motions to compel, for which he was ostensibly previously compensated by order of Magistrate Judge Africk, and for reviewing and organizing the file. These are not hours which were reasonably expended.

In addition, while Cimini's records are more fulsome in this regard, both attorneys frequently listed "Meeting with co-counsel" or "Meeting with co-counsel to discuss case" or "Meeting to discuss trial strategy", which are inadequate descriptions.

For these reasons, the Court finds that plaintiffs' two attorneys' billing records demonstrate little to no exercise of any billing judgment. In reviewing attorney's fees applications, the court may reduce or eliminate hours if the documentation of those hours is "vague or incomplete," and must consider whether the plaintiffs exercised proper billing judgment, which is the normal practice of law firms to write off unproductive, excessive, or duplicative hours. *Walker*, 99 F.3d at 769; *Hopwood v. State of Texas*, 999 F.Supp. 872, 914–15 (W.D.Tex.1998), *aff'd as to attorney's fees*, 236 F.2d at 277–281. Plaintiffs' attorneys who submit fee requests must exercise billing judgment, must write off excessive, redundant, or unproductive time, and do not have the right to bill for inadequately documented time or on issues on which they do not prevail. *Walker*, 99 F.3d at 769.

It is the burden of plaintiffs to demonstrate the reasonableness of the hours they have billed and they must prove that they exercised billing judgment. *Walker*, 99 F.3d at 770. The Court finds, based upon the evidence in the record, counsel's suggestion that there were a number of hours which were not billed is not supported and that plaintiffs did not exercise billing judgment in the submission of these time records. When there is no or scanty evidence of billing judgment,

"the proper remedy ... is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Id.; Hopwood,* 236 F.3d at 279, n. 88. The Court recognizes that a substantial amount of work was accomplished by Donelon and Cimini and that many hours were expended. However, their billing records do not reflect that even minimal billing judgment was exercised, as is required in order to meet the standard of establishing that all the hours claimed were "reasonably expended." After careful scrutiny of the record as a whole and particularly the time sheets, affidavits, and deposition testimony of counsel, this Court concludes that the proper reduction for both Donelon and Cimini is a 25% reduction in the number of hours claimed.

### *Enhancement, Interest, and Consideration of Johnson Factors*

 Plaintiffs seek a 25% enhancement of their fee request on the basis of certain *Johnson* factors, primarily the results obtained and the novelty and complexity of the case. Donelon also suggests that he was required to turn away a dog bite case and another possibly multi-plaintiff employment case because he was consumed with handling the instant claims.

With respect to the novelty and complexity of the legal issues inherent in this case, plaintiffs repeatedly emphasize that Marc Morial, mayor of the City of New Orleans who is an attorney and formerly handled employment discrimination cases, stated his opinion in his deposition that he thought the case was quite difficult. With due respect to Mayor Morial, while this case may not have been a "no-brainer", it was not so extraordinarily complex or difficult as to require an upward adjustment to the lodestar. Indeed, in their attorneys' fee motion and on the liability and causation issues arising in these actions, plaintiffs heavily relied on the *Hopwood* decision, a reverse discrimination case, which held that the admissions policy of the University of Texas School of Law violated the Fourteenth Amendment rights of the plaintiff-applicants, who were all white, because it impermissibly considered race as a criterion for admission.[28] The *Hopwood* case was appealed to the Fifth Circuit three times and an application for a writ of *certiorari* was filed in the United States Supreme Court. The first appeal was interlocutory, the second followed the district court's judgment on the merits, and the third was after remand to the district court for a determination on causation and damages, and attorney's fees and costs, which involved a four-day bench trial. The plaintiffs appealed the district court's 25 percent summary reduction for lack of billing judgment, inadequate time records, and duplicative work, reductions for lack of success, additional reductions of hourly rates of certain counsel, and refusal to enhance due to the complexity of the legal issues involved. The *Hopwood III* court affirmed the district court's decision on attorney's fees in all respects, noting pointedly:

The issues presented by this case may well provide grist for the political and legal mills, but they are "neither novel or extraordinarily difficult[.]" The un-

---

**28.** *Hopwood v. Texas,* 21 F.3d 603 (5th Cir. 1994) (*"Hopwood I "*), aff'g *Hopwood v. Texas,* No. Civ. A–92–CA–563–SS, 1994 WL 242362 (W.D.Tex. Jan.20, 1994); *Hopwood v. Texas,* 861 F.Supp. 551 (W.D.Tex.1994) (*"Hopwood A "*); *Hopwood v. Texas,* 78 F.3d 932 (5th Cir.), *cert. denied* 518 U.S. 1033, 116 S.Ct. 2580 (1996) (*"Hopwood II "*); *Hopwood v. Texas,* 999 F.Supp. 872 (W.D.Tex.1998) (*"Hopwood B "*); and *Hopwood v. Texas,* 236 F.3d 256 (5th Cir.2000) (*"Hopwood III "*).

derlying arguments about the place of affirmative action in the equal protection paradigm have been percolating since the Supreme Court's decision in *Bakke* [29] if not longer; only the evidence and analysis supporting each side have grown more sophisticated over the past two decades. Stated differently, this is not an issue that demanded a large amount of legal excavation in this instance.

236 F.3d at 279.

Simply put, if the *Hopwood* case did not qualify for a multiplier or enhancement because of its novelty, difficulty, or complexity, the *Lalla* case does not. The complexity of the issues and the proceedings in *Lalla* pale in comparison to those in the multi-phase proceedings of *Hopwood*. The Court finds that no enhancement is warranted in this regard.[30]

Plaintiffs next argue that they are entitled to an enhancement because of their extraordinary success and point to the decision in *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir.1998). In *Brady*, plaintiffs recovered damages in the sum of $ 401,109.43, and received an attorney's fee award of $ 751,370.75, nearly twice the damage award. It must be observed that in *Brady*, the case was initially appealed following a denial of qualified immunity to defendants on summary judgment, remanded to the district court for trial, tried to a jury, a post-trial motion for remittitur was granted, and appealed a second time. Here, liability was determined on sum-

mary judgment, the City never requested an interlocutory appeal of the liability ruling, and the case settled prior to jury trial. There was no trial and no appeal.

The Court acknowledges that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998), *citing Farrar*, 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). Plaintiffs tout both their success in securing a damage award of $ 499,999.99 to be shared by the eleven plaintiffs, and their accomplishment in ending the City's use of race in hiring Fire Recruits, as the City voluntarily abandoned the racial quota system following the adverse summary judgment ruling. Under the dictates of the Supreme Court, however, it is the plaintiff's monetary success which must be the "primary determinant of the attorney's fee." *Migis*, 135 F.3d at 1048, *quoting Farrar*, 506 U.S. at 114, 113 S.Ct. at 575 (*quoting City of Riverside v. Rivera*, 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1986) (Powell, J. concurring)).

While the results obtained is the most important factor in determining whether to adjust the lodestar, "the Supreme Court has specifically held that results obtained are presumed to be fully reflected in the lodestar and that the lodestar is presumed to be a reasonable fee.

---

**29.** *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).

**30.** Of no small significance is the fact that the district court awarded, and the appellate court affirmed, total fees, expenses, and interest in the *Hopwood* case of $ 776,760.31 for both trial and appellate work of 17 different attorneys. The district court awarded costs

alone of $ 71,768.02, recognized that it involved extensive discovery and spanned over five years, but refused to adjust the lodestar upward, finding that the lodestar was a fair estimate of an appropriate fee award. *Hopwood B*, 999 F.Supp. at 920–21. By contrast, plaintiffs seek nearly $ 500,000 in attorneys' fees and costs for two attorneys on a case that was never tried or appealed.

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*'Delaware Valley I'*); *Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–50, 79 L.Ed.2d 891 (1984); *see also Abrams v. Baylor College of Medicine,* 805 F.2d 528, 537 (5th Cir.1986). Enhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts. *Delaware Valley I,* 478 U.S. at 565, 106 S.Ct. at 3098." *Alberti v. Klevenhagen,* 896 F.2d 927, 936 (5th Cir.1990).

The Court does not find that plaintiffs have overcome the presumption that the lodestar is a reasonable fee and further finds that an enhancement for results obtained is not warranted in this case.[31] The lodestar attorneys' fee, adjusted for lack of billing judgment and duplication, awarded in this case is approximately $ 250,000, which reflects the success that plaintiffs achieved and the work which they performed, but the Court must account for the fact that plaintiffs' two major victories were won by summary judgment and a settlement. There was only a modest amount of discovery, and plaintiffs have already been compensated for 57+ hours they expended on motions to compel. Counsel were not forced to try or appeal any of the liability rulings, or causation damage verdicts herein, a great effort and time saver when viewed in the context of the myriad lengthy proceedings in the *Hopwood* case. The lodestar fee to be awarded, along with the costs, which were rather nominal, is reasonable and the Court finds no extraordinary or rare circumstances which would impel an enhancement for success achieved, but instead concludes that the circumstances outlined herein dictate against such a multiplier on these grounds.

As to the other *Johnson* factors[32], the Court finds no evidence in the record as to any of them which is sufficient to overcome the presumption that the lodestar is reasonable under § 1988. While Donelon suggests that he was precluded from taking other cases by the volume of work necessitated by the *Lalla* cases, the record does not support a finding that the other work would have been lucrative or resulted in greater fees than that obtained for *Lalla.* The record is devoid of evidence that plaintiffs' counsel viewed the case as "undesirable", that any of the plaintiffs had a prior professional relationship with counsel, or that any unreasonable time limitations were placed on plaintiffs' counsel by the clients or the circumstances. Plaintiffs' counsel has not cited any similar decision wherein less than 10 depositions were taken and the case was won by summary judgment and settlement in which a significantly higher fee was awarded. In short, the Court accords little weight to the remaining *Johnson* factors, as there is no evidence in the record which would support an enhancement on those grounds or would be sufficient to overcome the presumption of the reasonableness of the lodestar.

---

**31.** *See, Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir.1999) (Fifth Circuit reversed enhancement of lodestar for time limitations, results obtained, and preclusion of other employment by the attorney, noting that the Supreme Court "has stated that two of the *Johnson* factors considered by the district court, 'complexity of the issues' and 'results obtained,' are 'presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.'" *quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air.* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)).

**32.** *See Johnson,* 488 F.2d at 717–19.

■ Plaintiffs also seek a multiplier and/or interest for delay in payment. It is true that the proceedings extended over four years and, as outlined previously, the trial date was continued a number of times. In terms of the investment of costs by the plaintiffs' attorneys in pursuing these claims, plaintiffs took only nine depositions, engaged only two expert witnesses, and counsel were not required to travel extensively to conduct discovery. Plaintiffs request for costs is approximately $ 21,000, more than half of which is the cost of experts, which were incurred over four years. This is a minor outlay in light of the fact that there were eleven plaintiffs.

■ Generally, delay in payment is counterbalanced by using current attorney's fees rates to compensate historical work, or by applying an interest factor. *Alberti*, 896 F.2d at 938. Plaintiffs here seek current rates for all work performed from 1996 to the present. The use of current rates is a sufficient adjustment for delay in payment, and the Court declines to award additional interest on fees or costs or to employ a multiplier for delay in payment.

### Paralegal Fees

■ Attorneys may be compensated separately for paralegal time at market rates if the prevailing practice in the community is to bill that time separately. *Missouri v. Jenkins*, 491 U.S. 274, 287, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229 (1989). However, the normal hourly rate of an attorney is intended not only to compensate the attorney for the work he or she personally performs, but also for the work product of the attorney, i.e., the work performed by secretaries, messengers, librarians, janitors and "others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit." *Missouri*, 491 U.S. at 285, 109 S.Ct. at 2470. In determining whether the hours being claimed are for paralegal work and further whether those hours are reasonable, the Court must consider whether the activities being performed are actually paralegal work, such as "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri*, 491 U.S. at 288, 109 S.Ct. at 2471–72, n. 10. Work which is purely clerical or secretarial may not be billed at a paralegal rate. *Id.*

Plaintiffs Donelon and Cimini seek 682.75 hours of paralegal time to be compensated at $ 25 per hour. Neither Donelon nor Cimini furnished the Court with any time records, contemporaneous or otherwise, to support the number of hours claimed. Regarding his claim for paralegal hours, Donelon stated as follows in his affidavit:

Affiant stated that in addition to his time, Affiant's former and current secretary/paralegals have spent approximately *427.75* hours of time preparing and maintaining books on all 11 Plaintiffs which included their extensive financial records, typing all eleven memoranda submitted in regard to Plaintiffs' successful motion for summary judgment against the City, preparing exhibits and getting them copied and correctly arranging and re-arranging the exhibits in the 11 bench books which Plaintiffs' counsel prepared, copying new financial data in October of 2000 and getting it all into the Plaintiffs' 11 bench books, preparing, copying and arranging all the numerous exhibits which were attached to the 11 memoranda Plaintiffs' counsel submitted in conjunction with their suc-

cessful motion for summary judgment, typing, re-typing, and re-re-typing notes from client interviews, preparing and updating books for the financial records for each of the 11 Plaintiffs.

Affiant stated that $ 25.00 is an appropriate hourly rate for his former secretary/paralegal, who held a paralegal certificate, and for his current office personnel, and the total amount which Affiant seeks for his paralegal/secretaries time is *427.75*.

Second Affidavit of Clement P. Donelon, Exhibit A to Second Supplemental Memorandum in Support of Plaintiff's Motion to Assess Attorney's Fees and Costs, para. 53–54 (Rec.Doc. No. 329).

In the same vein, Cimini submitted his affidavit relative to his fee application, explaining his request for paralegal costs as follows, in pertinent part:

Affiant stated that in addition to his time, affiant's three former and present paralegals/secretaries in his office... worked on preparation for the cases at hand. The time spent includes, but is not limited to, typing of all pleadings and service requests, eleven discovery requests, several Motions to Compel Discovery, Motion for Sanctions against defendants for noncompliance with discovery, procurement and preparation of financial data on each of the eleven (11) plaintiffs, and various other tasks including, but not limited to, paralegal research, client interaction, exhibit preparation, and copying of necessary documentation and information.

Affiant stated that among the three former and present paralegal/secretaries in his office ... that worked on preparation for the cases at hand there were approximately 255 hours spent, and that a reasonable hourly rate for his time is $ 25.00 per hour.

Affidavit of R. Vaughn Cimini, Exhibit B to Plaintiff's Second Supplemental Memorandum in Support of Motion to Assess Attorney's Fees and Costs, para. 11–12 (Rec.Doc. No. 329).

While some of the hours sought by plaintiffs for paralegal work may have been for actual paralegal work, such as preparation of bench books and exhibits, patently many of the hours are for purely clerical or secretarial tasks, such as typing and copying. The mere fact that a person has a paralegal certificate does not transport that person's work from clerical to paralegal, any more than it elevates such tasks as copying, organizing files, typing, or filing and delivering pleadings, if performed by a person who has a law degree and has been admitted to the bar, into legal work.[33]

Plaintiffs have failed to furnish any documentation of the hours worked and review of their affidavits and deposition testimony suggests that much of the work performed by Donelon's and Cimini's staff was secretarial or clerical, and in fact, may have been duplicative. Both Donelon and

---

**33.** The Supreme Court has recognized that it is the nature of the work, not the title or education of the person performing it, that determines whether it is legal, paralegal, or secretarial/clerical in nature and the reasonable hourly rate the work is to be compensated, observing: "What the court in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974) said in regard to the work of attorneys is applicable by analogy to paralegals. 'It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by-non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.'" *Missouri*, 491 U.S. at 288, 109 S.Ct. at 2472, n. 10.

Cimini state that their paralegals/secretaries, who worked in separate offices, as did the attorneys, prepared bench books and compiled financial information. While the record is clear that Cimini was primarily responsible for the discovery motion practice and Donelon, as lead counsel, took the depositions and researched and drafted the summary judgment motions, oppositions, and responses, there was quite a bit of redundancy in the attorneys' time sheets submissions.

Without any time sheets, billing records, or documentation of any kind, the Court cannot ascertain whether the paralegal hours were reasonably expended, i.e., whether the hours were duplicative or excessive, or whether the nature of the work performed was paralegal in nature, or was clerical or secretarial. "The fee applicant has the burden of presenting adequate documentation of the hours reasonably expended... [and if] the applicant's documentation is 'vague or incomplete', the district court may reduce or eliminate those hours." *LULAC,* 119 F.3d at 1233; *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.), *cert. denied,* 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). Under these circumstances, the Court finds that plaintiffs have failed to establish that the hours they claimed for paralegal work were reasonably expended. The Court denies plaintiffs any recovery for paralegal hours.

### Costs

In addition to a reasonable attorney's fee, prevailing plaintiffs in civil rights actions may also recover costs pursuant to 42 U.S.C. § 1988(b). Costs normally taxed against the losing party are specified in 28 U.S.C. § 1920, which provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The fees indicated by 28 U.S.C. § 1920(3) are detailed in 28 U.S.C. § 1821. Under § 1821, witnesses are entitled to be paid an attendance fee of $ 40 per day for each day's attendance, as well as $ 40 per day for the time necessarily occupied in going to and returning from the place of attendance, and actual expenses of traveling by common carrier, toll charges, a travel allowance, and a subsistence allowance if the witness is required to stay overnight at the place of attendance because of the distance from his residence. Expert witness fees are not to be taxed as costs under 42 U.S.C. § 1988, except that if they are required to appear at trial or at deposition, the witness fees provided by 28 U.S.C. § § 1920 and 1821 can be recovered. *West Virginia University Hospitals, Inc. v. Casey,* 499 U.S. 83, 102, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991).

Attorney's out-of-pocket expenses which are ordinarily charged to fee paying clients may be recovered under 42 U.S.C. § 1988. *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998). These expenses include those incurred for "duplicating, postage, telephone, computerized

legal research and other office expenses." *Id.*

Other than the expert witness fees, which plainly are not recoverable,[34] the costs claimed by the plaintiffs are those which either fall directly within those ordinarily taxable under 28 U.S.C. § 1920, such as clerk's filing fees, copying costs, and transcript costs, or are those, such as fees for service, postage, telephone, parking, and computerized legal research, which are routinely charged to fee paying clients. Since there was no trial and there is no indication in the record that plaintiffs' experts were deposed, and thus would have been entitled to a witness fee or mileage and subsistence, the Court will deduct the expert witness fees, and award the remaining sum to the plaintiffs as costs.

### Conclusion

For the above and foregoing reasons, the Court hereby finds that plaintiffs are entitled to an award of attorneys' fees and costs under 42 U.S.C. § 1988(b) and hereby awards plaintiffs attorneys' fees in the total amount of $ 250,922.34 and costs in the amount of $ 9,147.37, as follows:

| Services of: | Hours | Rate | Subtotal | 25 % Ded. | Total |
|---|---|---|---|---|---|
| C. Donelon | 1,101.625 | $ 185 | 203,800.63 | (50,950.16) | $ 152,850.47 |
| V. Cimini | 871.75 | $ 150 | 130,762.50 | (32,690.63) | $ 98,071.87 |
| TOTAL ATTORNEY'S FEES [35] | | | | | $ 250,922.34 |

| Costs | Excluded Costs | | Total |
|---|---|---|---|
| $ 21,522.37 | (12,375.00) | | $ 9,147.37 |
| TOTAL COSTS | | | $ 9,147.37 |

Judgment shall be entered in accordance with this opinion.

---

**34.** *West Virginia University Hospitals,* 499 U.S. at 102, 111 S.Ct. at 1148.

**35.** All paralegal costs have been excluded for reasons stated herein.